## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

STEVEN H. MALLEN, and     :
WILLIAM J. MALLEN     :
      **Plaintiffs,**     :

           :     **CIVIL ACTION # 05 CV 10243 RGS**

**v.**     :

           :
**CITY OF BOSTON,** and **THE**     :
**BOSTON PUBLIC SCHOOLS**     :
**COMMITTEE,**     :
      **Defendants.**     :

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

The Plaintiffs, Steven H. Mallen and William J. Mallen ("the Plaintiffs") respectfully submit this Opposition to the Defendants' Motion to Dismiss. The Plaintiffs assert that, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"), and the Massachusetts Rules of Civil Procedure ("MRCP"), this Honorable Court should deny the motion filed by the Defendants and allow the Opposition.

### ARGUMENT

### I. THE STANDARD FOR DISMISSAL UNDER 12(b)(6)

Pursuant to Rule 12(b)(6) of the FRCP, the Plaintiffs request that this Court strike the Defendants' Motion to Dismiss. Rule 12(b)(6) provides that a party has a right to the dismissal of causes of action if the complaining party "fail[s] to state a claim upon which relief can be granted." MRCP 12(b)(6). Motions to dismiss are permissible where a party has failed to provide anything more than bald assertions that a cause of action exists. See Generally, Wright & Miller, Federal Practice & Procedure, §§ 1356-1357 (1992) ("Wright & Miller").

Under the FRCP and the MRCP, the court is to provide for liberal construction of pleadings. For example, Rule 8(a) states that a pleading must set forth a "claim for relief ... [and] shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief..." MRCP 8(a)(1). The Rules do not require the courts to give legal effect by allowing a party to simply make "bald statement[s]" with "conclusory allegations." Wright & Miller, supra, § 1357.

The Plaintiffs note that this Court should carefully scrutinize pleadings and generally should not dismiss claims for minor or insignificant infractions of the pleading requirements. Currie v. Cayman Resources Corp., 595 F. Supp. 1364, 1370 (N.D. Ga. 1984), aff'd in part and rev'd in part, 835 F.2d 780 (11th Cir. 1988) (In considering a motion to dismiss under 12(b)(6), "the allegations of the complaint and all reasonable inferences from the facts alleged must be taken as true"). The standard for deciding motions to dismiss under FRCP and MRCP 12(b)(6) is well-established: "[A pleading] should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Bracewell v. Nicholson Air. Serv., Inc., 680 F.2d 103, 104 (11th Cir. 1982); see also Quality Foods v. Latin Amer. Agribusiness Dev., 711 F.2d 989, 995 (11th Cir. 1983). This comports with the fundamental purpose of pleadings to provide adequate notice to the parties of each side's claims and to allow cases to be decided on the merits after an adequate development of the facts. Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993).

As a result, a pleading is typically liberally construed in favor of the complaining party. See, e.g., Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979). Additionally, a complaining party is usually granted the benefit of the necessary inferences which can be derived from all of the facts and from the pleadings. Id.; see also Pearman v. Norfold & Western Railway Co., 939 F.2d

521, 523 (7th Cir. 1991); St Joseph's Hospital v. Hospital Corp. of America, 795 F.2d 948 (11th Cir. 1986). If an allegation is capable of multiple inferences, the courts usually will construe such allegation in a light most favorable to the pleading party. Mayer v. Mylod, supra, 988 F.2d 638.

The court, however, is not required to accept unwarranted factual inferences as true. Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987). The fact that an allegation is made in a pleading does not grant it extended inferences or a higher standard of consideration than that which would typically be applied to motions to dismiss. Id.; Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039 (6th Cir. 1991); Shapiro v. Merrill Lynch & Co., 634 F. Supp. 587, 595 (S.D. Ohio 1986).

The Plaintiffs' allegations in their claims meet the minimal requirement of notice pleadings as provided in the FRCP and MRCP. See, e.g., Garrity v. Garrity 399 Mass. 367 (1987); Independence Park, Inc. v. Barnstable Bd. of Health, 403 Mass. 477 (1988). In filing their action, the Plaintiffs clearly identify and articulate each act which support the claims they have pled. As a result, if the pleadings are taken as "true" and the Plaintiffs are granted all reasonable inferences, this Court must maintain all counts in the Plaintiffs' Complaint.

The Plaintiffs have clearly pled their claim with specific explicit instances that support their claim that the Defendants had violated the Federal law or the Massachusetts law.

In the instant action, the Plaintiffs have alleged information, which if accepted as true, has demonstrated a significant basis to maintain their claims. Charland v. Muzi Motors, Inc., 417 Mass. 590 (1994).

The crux of the issue, which is specifically the point raised by the Defendants in their Motion to Dismiss, is that such action and wilful conduct arose in the course of the employment relationship

but served no legitimate business purpose. <u>Doe v. Purity Supreme, Inc.</u>, 422 Mass. 563, 566 (1966);

<u>compare</u>, <u>Green v. Wyman- Gordon Co.</u>, 422 Mass. 551, 558-61 (1996); <u>Foley v. Polaroid Corp.</u>,

400 ass. 82, 93 (1987). The actions of the Defendants by such scurrilous statements and actions

impute serious and wilful misconduct in the work environment.

    Employees in Massachusetts are not barred from bringing actions against fellow employees

who commit intentional torts which were in no way within the scope of employment furthering the

interests of the employer. <u>O'Connell v. Chasdi</u>, 400 Mass. 686, 690 (1987).

## II.  THE MALLENS HAVE STATED VALID CLAIMS UNDER MASS. GEN. LAWS c. 149, § 185 AND 5 U.S.C.A. § 2302(B)(8) UPON WHICH RELIEF CAN BE GRANTED.

    A.    <u>The Mallens' Claims Under Mass. Gen. Laws c. 149, § 185 Are Not Barred Because the Mallens Provided Written Notice to the Boston Public Schools.</u>

    Although M.G.L. c. 149, § 185(c)(1) requires an employee to provide "written notice" to his

employer and to afford "the employer a reasonable opportunity to correct the activity, policy or

practice" before reporting the activity to a "public body" the statute waives the written notice

requirement if the employee:

> (A) is reasonably certain that the activity, policy or practice is known to one or more supervisors of the employer and the situation is emergency in nature; (B) reasonably fears physical harm as a result of the disclosure provided; or (C) makes the disclosure to a public body as defined in clause (B) or (D) of the definition for "public body" in subsection (a) for the purpose of providing evidence of what the employee reasonably believes to be a crime.

    Even if none of the above exceptions apply, the Mallens provided written notice to the

Boston Public Schools ("BPS") of the BPS's failure to comply with local fire safety regulations by

providing list(s) of defects, ("punch lists") their immediate superior, the chief engineer for the City

-4-

of Boston and the design engineer(s) of each fire safety system for each public school that the Plaintiffs' were required to test in the City of Boston. Additionally, the Plaintiffs would refuse to "sign off" on paperwork intended to certify that certain BPS fire safety systems complied with local fire codes. Since the compliance forms were written forms, the Mallens' refusal to sign caused the written documents to be sent to their supervisor, the chief engineer, the design engineer(s) and the Boston Fire Department, thereby notifying the Mallens' supervisors, in writing, that the school fire systems in question failed to conform either to its intended design or the appropriate fire code. Thus, the Mallens' refusal to sign the compliance forms not only provided the BPS with written notice of non-compliance but also provided the BPS with ample opportunity to correct the situation.

If the Mallens' consistent submission of unsigned compliance forms is insufficient to constitute written notice that there was a problem, then the Mallens did provide prior written notice by punch list of fire system problems, and later by grievance to the entire Boston Public School Department through the employee union. In situations involving disputes between BPS employees and their supervisors or the BPS itself, procedure generally requires that the aggrieved union employee file a complaint with the union. The union then submits that complaint, on behalf of the aggrieved employee, to the BPS. The Mallens did file a complaint with the union and the union submitted that complaint by grievance to the BPS. Because the union submitted the Mallens' grievances in writing to the BPS, the Mallens satisfied the requirement that they provide the BPS with written notice of the their belief that they were wrongly discharged from their employment with the BPS.

Counsel for the defendants may argue that the Mallens still provided written notice to a

"public body" since the Mallens first notified the union of their grievance rather than the BPS. However, this argument is incorrect since M.G.L. c. 149, § 185(a)(3) defines "public body" as:

> (A) the United States Congress, any state legislature, including the general court, or any popularly elected local government body, or any member or employee thereof; (B) any federal, state or local judiciary, or any member or employee thereof, or any grand or petit jury; (C) any federal, state or local regulatory, administrative or public agency or authority, or instrumentality thereof; (D) any federal, state or local law enforcement agency, prosecutorial office, or police or peace officer; or (E) any division, board, bureau, office, committee or commission of any of the public bodies described in the above paragraphs of this subsection.

A labor union fits none of the possible definitions promulgated under M.G.L. c. 149, § 185(a)(3) since a labor union is not a government body, judiciary, a regulatory agency, a law enforcement agency, or even related to any of these definitions. Thus, the Mallens provided written notice to the BPS first through an agent and not to a "public body."

Counsel for the defendants might also argue that the Mallens did not satisfy the written notice requirement since the Mallens provided notice indirectly through the union rather than directly writing and submitting a letter to the BPS. Again, this argument would be misplaced. M.G.L. c. 149, § 185(c)(1) merely requires that the employee provide written notice prior to reporting the violation to a public body and does not require that the Plaintiff himself write the notice. The court in Dirrane stated that "the statute is unqualified in its requirement [of written notice] and in this instance a hard and fast rule does serve a rational purpose, namely, by avoiding uncertainties about what might have happened if formal notice had been given." Dirrane v. Brookline Police Dept., 315 F.3d 65, 73 (2002). Since the Dirrane decision the court in Bennett has clarified that "[f]airly read, the notice requirement is a procedural accouterment--no more, no less . . . [i]t sets up a hoop through which a whistle blower plaintiff must jump on his or her way to relief." Bennett v. City of Holyoke, 362 F.3d. 1, 8 (2004). Therefore, as a procedural requirement

the Court should construe the notice requirement as broadly as possible and consider any written notice, whether submitted directly by the Mallens or indirectly through the union, as satisfying the written notice requirement in M.G.L. c. 149, § 185(c)(1).

B.    The Mallens' Claims Under 5 U.S.C.A. § 2302(B)(8) Are Not Barred Because the Mallens Made a Protected Disclosure Which They Reported to a Higher Authority at the BPS Who Was In a Position to Correct the Wrongdoing.

Dismissal of the Mallens' complaint under 5 U.S.C. § 2302(b)(8) would be improper since the Mallens made a protected disclosure to an authority higher than the Mallens' supervisors and the BPS still failed to take a personnel action as defined by 5 U.S.C.A. § 2302(a). Hooven-Lewis v. Caldera, 249 F.3d 259, 276 (4th Cir. 2001). A protected disclosure under 5 U.S.C.A. § 2302(B)(8) includes:

> (A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believes evidences--
> > (i) a violation of any law, rule, or regulation, or
> > (ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

The Mallens satisfy the above test because their refusal to approve faulty fire systems throughout the Boston Public School System was due to their reasonable belief that to do so would be in violation of fire codes as well as a "substantial and specific danger to public health or safety," specifically the safety of the numerous children who attend schools within the Boston Public School System.

The Mallens also satisfy the above test because they disclosed the wrongdoing to a higher authority than their supervisors. As the court in Hooven-Lewis stated, a person asserting a claim under 5 U.S.C.A. § 23 must show that the disclosure in question indicates an intent to raise the issue

with a "higher authority who is in a position to correct the alleged wrongdoing." Hooven-Lewis v. Caldera, 249 F.3d at 276. In Hooven-Lewis the court stated that the plaintiff's complaints to her immediate supervisor about the supervisor's "own wrongdoing did not evidence an intent to disclose [the supervisor's] wrongdoing to an authority higher than [the supervisor]." Id. The court further stated that "[c]riticism directed at the wrongdoer herself is not whistle blowing." Id. Thus, an employee cannot merely complain of the danger to public health or safety to his immediate supervisor, but must bring the matter to the attention of some higher authority within the company.

Similarly, in the Willis case the plaintiff again failed to complain of the wrongdoing to anyone other than his direct supervisors. Willis v. Department of Agriculture, 141 F.3d 1139, (Fed. Cir. 1998). The court in Willis ruled that "[i]n complaining to his supervisors, [the plaintiff] has done no more than voice his dissatisfaction with his superiors' decision . . . He has taken no action to bring an issue to the attention of authorities in a position to correct fraudulent or illegal activity." Id. Again, the court in Willis reasoned that a protected disclosure requires that the employee report the activity in question to a person in a higher position than that of his immediate supervisors. Id.

In the case at bar, the Mallens reported the lack of fire system compliance not just to their immediate supervisors but also to higher authorities, including the Chief Engineers, and the Design Engineer(s) within the BPS who "could remedy the wrongdoing." Because the Mallens disclosed information that either constituted a violation of law or a threat to public safety and disclosed the information to their supervisors as well as higher authorities within the BPS, the Court should not dismiss their claims under 5 U.S.C.A. § 2302(B)(8).

### III. THE MALLENS' CLAIMS FOR PERSONAL INJURIES SHOULD NOT BE DISMISSED BECAUSE THE MALLENS' INJURIES DO NOT FIT THE DEFINITION OF PERSONAL INJURY UNDER MASS.GEN. LAWS c. 152, § 1.

While it is correct that an employee's common law actions are barred by the exclusivity of the Massachusetts Worker's Compensation Act ("MWCA") if the employee's condition is a "personal injury" within the meaning of the MWCA, the Mallens' injury does not fit the MWCA definition and is therefore not barred by the MWCA.  The MWCA provides "[n]o mental or emotional disability arising principally out of a bona fide, personnel action including a transfer, promotion, demotion, or termination except such action which is the intentional infliction of emotional harm shall be deemed to be a personal injury within the meaning of this chapter."  Mass. Gen. Laws c. 152, § 1 (2005).  If the Mallens' injury does not fit the MWCA definition of personal injury then they are not barred from recovery by the MWCA.  See Green v. Wyman-Gordon Co., 422 Mass. 551, 558, 664 N.E.2d 808 (1996).

Discharge in retaliation for a refusal to approve faulty fire systems throughout the Boston Public School System is not only manifestly against public policy but it is also not "a bona fide personnel action."  Therefore, by terminating the Mallens from their positions with the BPS for their refusal to approve faulty fire systems the BPS has directly caused the Mallens personal injury that has not arisen from "a bona fide personnel action."  As a result, the Court should not allow the motion to dismiss the Mallens' claims for intentional and negligent infliction of emotional distress.

## IV.  THE COURT SHOULD NOT DISMISS MR. STEVEN MALLEN'S CLAIMS FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT POMELLA BECAUSE POMELLA WAS NOT ACTING WITHIN THE SCOPE OF HIS EMPLOYMENT WHEN HE ASSAULTED MR. MALLEN.

It is true that "Traditionally, the statutory bar to a common law claim under the workers' compensation act is treated as a lack of subject matter jurisdiction." Fusaro v. Blakely, 40 Mass.App.Ct. 120, 123, 661 N.E.2d 1339 (1996); O' Dea v. J.A.L., Inc., 30 Mass.App.Ct. 449, 451 n. 4, 569 N.E.2d 841 (1991); Foley v. Polaroid Corp., 381 Mass. 545, 548, 413 N.E.2d 711 (1980).  However, "a claim against a fellow worker for the commission of an intentional tort will be barred by the exclusivity clause of the MWCA, G.L. c. 152, § 24, if committed within the course of the worker's employment and in furtherance of the employer's interest." Id. (quoting O'Connell v. Chasdi, 400 Mass. 686, 690-691, [511 N.E.2d 349] (1987)).

The purpose of the MWCA is to ensure that employees who give up their common law rights to sue their employers will not be without recourse, but will have a mechanism to be reimbursed for their employment-related injuries "regardless of fault or foreseeability." Neff v. Commissioner of Dept. of Indus. Accs., 421 Mass. 70, 75, 653 N.E.2d 556 (1995).  The MWCA provides employees who are injured on the job with the exclusive remedy against their employers who are thereby protected from civil suits.  O'Connell v. Chasdi, 400 Mass. 686, 690-691, 511 N.E.2d 349 (1987); Catalano v. First Essex Sav. Bank, 37 Mass.App.Ct. 377, 381-382, 639 N.E.2d 1113 (1994); Fusaro v. Blakely, 40 Mass.App.Ct. 120, 123, 661 N.E.2d 1339 (1996);2981;F5;F6;2981;F5;F6.  In addition, the act provides the employee with the exclusive remedy against any co-employees who engage in tortious conduct "within the course of their employment and in furtherance of the employer's interest." Id.

-10-

However, Co-employees are absolutely not immunized from suit by the MWCA for tortious acts they commit outside the scope of their employment and which are unrelated to the interest of the employer. <u>Brown v. Nutter, McClennen & Fish</u>, 45 Mass. App. Ct. 212, 216, 696 N.E.2d 95 (1998) (citing <u>Locke</u>, Workmen's Compensation § 10.5, at 273 (Nason & Wall Supp.1995)). Thus, the court in Brown stated that the defendant co-employee was not immunized from the plaintiff's claim of intentional infliction of emotional distress if the defendant co-employee's alleged tortious conduct was not within the course of his employment or did not further his employer's interest. <u>Id</u>. Therefore, the court reasoned that "case law suggests the necessity of a fact-intensive analysis to answer" whether the co-employee's actions were within the scope of his employment or in furtherance of his employer's interest. <u>Id</u>. Similarly, in <u>O'Connell</u>, the court stated that the defendant engaged in a series of tortuous acts including unwanted sexual advances, assault, battery, and intentional infliction of emotional distress, which "were not remotely related to the employer's interests." <u>O'Connell v. Chasdi</u>, 400 Mass. 686, 511 N.E.2d 349 (1987).

Similar to the assault in O'Connell, Pomella was in no way acting "within the course of [his] employment and in furtherance of the employer's interest" when he assaulted and verbally threatened Steven Mallen with physical violence. Because Pomella's assault was not committed within the course of his employment M.G.L. c. 152, § 24 should not bar Steven Mallen's common law claims for intentional or negligent infliction of emotional distress.

-11-

## V. THE DOCTRINE OF SOVEREIGN IMMUNITY DOES NOT BAR THE MALLENS' CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS SINCE THE BPS'S CONDUCT DOES NOT PASS THE WHITNEY TEST AND THE BPS'S RIGHT TO SOVEREIGN IMMUNITY HAS BEEN WAIVED BY STATUTE.

While the doctrine of sovereign immunity may insulate municipalities from liability for the acts of public employees in limited instances, the case at bar is not such an instance. Concerned with the unjust results achieved by blind application of sovereign immunity, the court in Whitney propounded a narrow test for determining when a government entity is entitled to such immunity:

> "When the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities should remain immune from liability."

Whitney v. Worcester, 373 Mass. 208, 218, 366 N.E.2d 1210 (1977). Thus, "when the particular conduct claimed to be tortious involves rather the carrying out of previously established policies or plans, such acts should be governed by the established standards of tort liability applicable to private individuals or entities and the governmental entity in question held liable for the injuries resulting from such acts." Id. Furthermore, this test should be applied "regardless of whether the individual tortfeasor would previously have been classified as a public officer, an employee of a public officer, or a municipal employee." Id. When applying this test, the court propounded several factors that a court may consider when denying sovereign immunity to the government entity including whether the injury-producing conduct was "an integral part of governmental policymaking or planning." Id. at 219. If these considerations are "not determinative," then "governmental liability should be the general rule." Id.

-12-

The BPS and Pomella's treatment of the Mallens in no way involves "the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy." Id. at 218. On the contrary, Pomella's assault and the BPS's decision to terminate the Mallens' employment was predicated on both parties attempt to coerce the Mallens' into contravening public policy as it pertains to fire safety within the Boston Public School System. Thus, the court should not dismiss the Mallens' claim for intentional infliction of emotional distress.

Even if M.G.L. c. 258, § 2 has abrogated the Whitney test for applying sovereign immunity to governmental bodies, the BPL's right to sovereign immunity has been waived by statute. As counsel for the defendant has correctly stated, the Bain court stated that sovereign immunity remains in effect "unless consent to suit has been 'expressed by the terms of a statute, or appears by necessary implication from them'" Bain v. City of Springfield, 424 Mass. 758, 763, 678 N.E.2d 155 (1997) (citing C&M Constr. Co. v. Commonwealth, 396 Mass. 390, 392, 486 N.E.2d 54 (1985)). When ruling that the Commonwealth's right to immunity had been waived by statute the court in Bain reasoned that "the statute on which the city's liability depends, waives the sovereign immunity of the [Commonwealth] by including [the Commonwealth] in the statutory definition of persons and employers subject to the statute," and by specifically providing for the award of actual and punitive damages." Id. The court in Bain further provided that "[t]he natural and ordinary reading of these provisions is that the Commonwealth and its subdivisions are liable for punitive damages on the same basis as other 'persons' and 'employers.'" Id.

-13-

Similar to <u>Bain</u>, the case at bar involves liability under a statute that defines "Employer" as "the commonwealth, and its agencies or political subdivisions, including, but not limited to, cities, towns, counties and regional school districts, or any authority, commission, board or instrumentality thereof." M.G.L. c. 149, § 185(a)(2). In addition, the statute provides that "[a]ll remedies available in common law tort actions shall be available to prevailing plaintiffs." M.G.L. c. 149, § 185(d). Thus, the "natural and ordinary reading of these provisions" is that the BPS as a "regional school district" of the Commonwealth is liable for personal injuries as well as punitive damages that result from its negligent and intentional conduct as well as the negligent and intentional conduct of its employees, including intentional infliction of emotional distress. As a result, the Court should not dismiss the Mallens' claims for emotional distress.

## VI. THE MALLENS' COMPLAINT SHOULD NOT BE DISMISSED BECAUSE NO AGREEMENT TO ARBITRATE IS CURRENTLY IN EFFECT AND THE UNION HAS STATED THAT IT DOES NOT REPRESENT THE MALLENS' INTERESTS IN THE CURRENT ARBITRATION.

The agreement to arbitrate and the employment contract in the current matter expired prior to the occurrence of the retaliatory termination.[1] The allegations leading to the Mallens' termination, which gave rise to the controversy, occurred in or about October, 2004. The Mallens are no longer obligated to submit their claim to arbitration. Since the contract expired on August 31, 2003, the contract was no longer in effect at the time of the Mallens' termination. <u>See</u> Local 888 Contract, attached as <u>Exhibit 1</u>). Mass. Gen. Laws c. 150E, § 11 provides that a

---

[1] The Court should be made aware that both the Union and the Boston Public Schools Committee are currently in arbitration at the American Arbitration Association as to whether the now expired contract can be posthumously enforced by the Union. Further, the Boston Public School Committee during the negotiation of the now expired contract, expressly opted not to consider and agree to any survival ("evergreen") provision that would have bound the parties to continue to perform pursuant to the terms of the agreement after its expiration and until such time as a new contract could be agreed to.

-14-

court shall vacate an arbitration award if "there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection." M.G.L. c. 150E, § 11(a)(5). Though the Mallens are not petitioning the court to vacate an award, the language of the statute suggests that an arbitration panel does not possess jurisdiction to make an award where there is "no arbitration agreement." Since the employment contract in the case at bar had expired and the Mallens have both verbally and in writing objected to arbitration, there was no arbitration agreement in effect and as a result the Mallens should not be made to resolve their dispute in arbitration rather than in court.

In addition, the union has repeatedly asserted that it is pursuing arbitration on behalf of its own interests rather than to protect the Mallens' interests. (See November 18, 2004, Letter from Local 888 at ¶2, attached as Exhibit 2). Specifically, the BPS and the Union have unequivocally stated that the Mallens' complaints in Federal Court are not related to the matters currently in arbitration. (See February 24, 2005 Letter from Local 888 at ¶2, attached as Exhibit 3). If the union has failed to represent the Mallens' interests in arbitration, the Court would be denying the Mallens' an opportunity to have their case heard by refusing the Mallens' case. Therefore, the Court should not dismiss the case at bar since the Mallens do not have an obligation to arbitrate nor is the union currently representing the Mallens' interests in the current arbitration with the BPS.

### III. CONCLUSION

The Defendants have improperly presented numerous factual arguments contrary to the

12(b)(6) requirement of accepting the Plaintiffs' Pleadings as true.  The court should disregard

all factual arguments and rely solely on the Complaint in considering the Defendants' 12(b)(6)

Motion to Dismiss.


### REQUESTS FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request that, pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure, the Massachusetts Rules of Civil Procedure, this Honorable

Court deny the Defendants' Motion to Dismiss in its entirety; and grant any other relief which

this Honorable Court deems just and proper.


Respectfully Submitted,
PLAINTIFFS, Steven H. and William J. Mallen,

By their Attorneys,

James F. Champa, Esq.
CHAMPA & POWERS, P.A.
One McKinley Square, 6th Floor
Boston, MA  02109
BBO # 561160
(617) 523-1885

Dated: March 15, 2005

-16-

## CERTIFICATE OF SERVICE

I, James F. Champa, of Champa, & Powers, P.A., do hereby certify that on March 15, 2005, I caused to be served the Plaintiff's Opposition to the Defendants' Motion to Dismiss upon Alissa Ocasio, counsel for the Defendants, by first class mail, postage prepaid.

Dated: March 15, 2005

James F. Champa, Esq.

# AGREEMEN

## BOSTON SCHOOL COMMITTEE

&

## LOCAL 285
## SEIU, AFL-CIO
### PLANNING & ENGINEERING UNIT

### SEPTEMBER 1, 2000 – AUGUST 31, 200

**285** Local 285
Service Employees International Union, AFL-CIO
21 Fellows Street, Roxbury, MA 02119-2523
617 442-4100 Toll-free: 1 800 882-1467 Fax 617 541-6839

Regional Office
P.O. Box 60339, Florence, MA 01062
413 586-7886 Fax 413 584-1159
Way Street Address: 267 Locust Street, Northampton

**WWW.SEIU285.ORG**

# How to Participate

Here are ways to participate in your union:

### Worksite Stewards

 are SEIU's primary representatives in the workplace. Stewards help other members by providing information and assistance on grievances, contract questions, and other issues.

### Member Organizers

 are active Local members who help organize non-union workers into SEIU.

### Member Political Organizers

are members who are interested in and willing to organize co-workers around political activities that will improve life for working families. . The Committee on Political Education (COPE) raises voluntary contributions from SEIU members to help identify and support legislators who are sensitive to our issues.

### Civil Rights Committee and Caucuses

 Our Civil Rights Committee works to protect individuals from discrimination of any kind. Local 285 also has active African-American, Latino, Haitian and Lavender caucuses.

### Chapter Officers

 Each of the more than 100 chapters in Local 285 elects its own officers: Chapter Chair, Vice-Chair, Membership Chair, and other offices the chapter members choose. Running for the local's Executive Board is another way to get involved.

**You Are the Union**
*Call now to get involved*



# Organizing and Political Action: Two Keys to Union Strength

## ...ng

an employer down
...ys lower wages,
...your salary won't
...anizing others in
...who don't have the
...on jobs–and rais-
...dard of living–is an
...y we can improve
...

...many SEIU mem-
...o organize other
...e can make a better
...milies– better
...etter pay, better
...d job security–if we
...er and organize for
...ur industries.

## Political Action

We must use our membership
strength to build political
strength, to hold lawmakers ac-
countable for protecting our
rights and supporting the issues
important to working families.

SEIU encourages members
to be politically active. We
must work in our communities
to make the issues that are im-
portant to working families
widely known. We need to reg-
ister to vote and go to the polls
on election day. We must hold
officials accountable–every
day–for improving the lives of
working families.

# Your Rights on the Job

Everyone wants smooth working relationships on the job. But problems arise
in every workplace. As an SEIU member, you have the right to Union
protection and representation–rights guaranteed by your contract.

## When Problems Arise– Talk to Your Steward

### Contract Violations

If you think that management has
violated your rights, or you have
questions about work, talk with your
Steward.

Your Steward is your on-the-job
Union representative for answering
questions and resolving problems.

You have the right to file a formal
complaint seeking justice when one
of your contractual rights has been
violated by your boss.

The complaint is called a
*"grievance"* and the system used to
process it is referred to as the
*"grievance procedure."* Read your
contract to find out what the exact
procedure and timelines are for your
workplace.

Remember, grievance proce-
dures have strict time limits. File
promptly.

## When in Trouble– Demand Union Representation

You have the right to representa-
tion by your Steward during conver-
sations with your boss which could
potentially lead to discipline or termi-
nation – a protection enjoyed only by
Union members. If you think the
conversation is disciplinary in na-
ture, follow these important steps–
sometimes referred to as your ...

### "Weingarten Rights"

• *Demand Union representation.*
You must ask for Union steward
representation before or during the
interview.

• *Do not make any statements
or answer any questions without
a steward present.* You cannot
be forced to make a statement.

The Weingarten Rights do not
apply to everyday conversations
between members and supervisors
regarding regular job duties or work
performance.

# Rights and Responsibilities
## in the Union

have opinions heard and respected, to be informed of
y, to be educated in union values and union skills.

choose the leaders of the union in a fair and democratic

a full accounting of union dues and the proper stewardship
esources.

participate in the union's bargaining efforts and to approve
cts.

have members' concerns resolved in a fair and expeditious

## bilities

sibility to help build a strong and more effective labor
to support the organizing of unorganized workers, to help
cal voice for working people, and to stand up for one's co-
d all workers.

sibility to get informed about the internal governance of the
o participate in the conduct of the union's affairs.

sibility to contribute to the support of the union.

sibility to treat all workers and members fairly.

sibility to offer constructive criticism of the union.

# Your Union Family

Local 285 is an important part of the broader national labor movement.

Here's how we fit in:

### AFL-CIO
### American Federation of Labor-
### Congress of Industrial Organizations

The AFL-CIO is the umbrella organization for the major unions in the United
States.  We also belong to the Massachusetts AFL-CIO, and local Central
Labor Councils.

## SERVICE EMPLOYEES INTERNATIONAL UNION

Headquartered in Washington, DC, the 1.3 million-member Service Employ-
ees International Union represents workers throughout the United States,
Canada and Puerto Rico.

SEIU is the third largest and fastest growing union in the AFL-CIO. The
International office provides resources to Local Unions, as well as help and
direction on major national campaigns.



### International Officers
Andrew L. Stern, *International President*
Betty Bednarczyk, *International Secretary-Treasurer*
Anna Burger, *Executive Vice President*
Patricia A. Ford, *Executive Vice President*
Eliseo Medina, *Executive Vice President*
Paul Policicchio, *Executive Vice President*

### YOUR LOCAL UNION : LOCAL 285

SEIU is made up of more than 300 Local Unions. You belong to SEIU Local
285 which is headquartered in Boston and has a regional office in
Northampton.  Local 285 represents 12,000 workers in healthcare and the
public sector, across Massachusetts.

Celia Wcislo, *President*
Frank Borges, *Secretary-Treasurer*

## TABLE OF CONTENTS

PAGE

ARTICLE 1 – RECOGNITION ......................................... 1

ARTICLE 2 – MANAGEMENT RIGHTS .................................. 2

ARTICLE 3 – SALARY RATES OF PAY ................................ 3

ARTICLE 4 – SICK LEAVE ......................................... 5

ARTICLE 5 – SICK LEAVE REDEMPTION .............................. 7

ARTICLE 6 – LEAVES OF ABSENCE .................................. 7

ARTICLE 7 – VACATION ........................................... 8

ARTICLE 8 – GRIEVANCE PROCEDURE ................................ 9
          Definition .......................................... 9
          Adjustment of Grievances ............................ 9

ARTICLE 9 – ARBITRATION ........................................ 12

ARTICLE 10 – PROTECTION ........................................ 12

ARTICLE 11 – EMPLOYEE FILES .................................... 13

ARTICLE 12 – UNION BUSINESS .................................... 13

ARTICLE 13 – DUES DEDUCTION .................................... 14

ARTICLE 14 – AGENCY FEE ........................................ 14

ARTICLE 15 – HOURS OF WORK ..................................... 14
          Flextime ............................................ 15
          On-Call ............................................. 15

ARTICLE 16 – OVERTIME .......................................... 15

ARTICLE 17 – HOLIDAYS .......................................... 16

ARTICLE 18 – VACANCIES AND PROMOTIONS .......................... 16

ARTICLE 19 – TRAVEL REIMBURSEMENT .............................. 16

ARTICLE 20 – ACADEMIC ADVANCEMENT .............................. 17

ARTICLE 21 – INSURANCE ......................................... 17

NEW ISSUES ........................... 19

S ................................... 19

................................. 20

E ................................. 20

OF DIFFERENCES BY PEACEFUL MEANS ....... 20

EVALUATION ........................... 21

S ................................. 22
y of Boston .......................... 22
ance Program ......................... 23
und .................................. 23

ACTION/NON-DISCRIMINATION ............. 23

MENT RELATIONS COMMITTEE .............. 23

H AND SAFETY ......................... 24

CREENING ............................. 24

L CHANGE ............................. 24
................................. 25
................................. 25

................................. 26

N UPGRADES ........................... 27

................................. 29

................................. 31

................................. 34

## AGREEMENT

This Agreement made and entered into by and between the School Committee of the City of Boston and the Service Employees International Union, Local 285, AFL-CIO/CLC (hereafter "the Union"), and representing the Professional Employees of the Planning and Engineering Department shall become effective September 1, 1996 and continue in effect until August 31, 1998.

## ARTICLE 1 - RECOGNITION

The School Committee of the City of Boston recognizes the Union as the exclusive bargaining agent for all the Professional Employees of the Department of Planning and Engineering of the School Department of the City of Boston; except Director of Facilities/Senior Structural Engineer, Assistant Director-Construction, Assistant Director-Design and Development, Senior Engineer, Mechanical Engineer, Project Director, Program Director, Program, Coordinator of Operations, Coordinator, Community, Contract Specialist.

| TITLE | SALARY GRADE |
|-------|--------------|
| Assistant Supervisor of S.B., Electrical Installations and Maintenance | D |
| Chief Electrical Engineer | G |
| Chief Supervisor, S.B., Alterations and Repairs | G |
| Chief Supervisor, S.B., Plumbing and Gasfitting | G |
| Chief Supervisor, S.B., Heating and Ventilation | G |
| Architectural Draftsmen (Junior) | D |
| Civil Engineer (Junior) | E |
| Senior Electrical Engineer | F |
| Senior Supervisor, S.B., Alterations and Repairs | F |
| Senior Supervisor, S.B. Electrical Installations and Maintenance | F |
| Senior Supervisor, S.B., Heating and Ventilation | F |
| Senior Supervisor of Plumbing and Gasfitting | F |
| Senior Supervisor, S.B., Roofs | F |
| Supervisor, S.B., Alterations and Repairs | E |
| Supervisor, S.B., Electrical Installations and Maintenance | E |
| Supervisor, S.B., Heating and Ventilation | E |
| Supervisor, S.B., Roofs | E |
| Supervisor, S.B., Plumbing and Gasfitting | E |
| Principal Architectural Draftsman | F |
| Civil Engineering | F |

---

or S.B. Roof..................................G

1, 1999 the following positions are accreted into
the salary grade indicated:  (At the September 1,

SALARY

inator Facility Planner               G
alist Energy Management               G
alist Environmental                   G
ician (Energy or Environmental)       F
Energy or Environmental)              E
inator/Planner                        G

n no longer exists.  If it is re-established, it
f the bargaining unit.

t employee shall remain under the Management
l such time as the position is vacated.  When the
cated it shall revert back to the bargaining unit

employee holding the current position of
rgy shall be upgraded to Senior Specialist Grade

ently held by Gerry Paull, Heather Lewchik and
(currently managerial positions) will become
c positions.  These positions will be assigned
ary grades.

### ARTICLE 2 – MANAGEMENT RIGHTS

gnizes the right of the Committee to manage the
direct employees covered by this Agreement in
their responsibilities, the right to hire, to
pend or discharge employees for just cause,
uch rights shall not be exercised arbitrarily or
r in conflict with the Agreement or current laws

express provisions of this Agreement, the
not be limited in any way by this Agreement in
e of the regular and customary functions of
l reserves and retains all powers, authority and
ncluding and without limitation, the exclusive
ommittee to issue reasonable rules governing the

conduct of the Department. provided that these rights are not
exercised in conflict with existing laws and regulations in this
Agreement.

### ARTICLE 3 – SALARY RATES OF PAY

**Section 1.**  Effective September 1, 1998 - increase the salary
schedule by 3%.

#### SALARY SCHEDULE Effective 9/1/98

| Salary Grade | STEP 1 | STEP 2 | STEP 3 | STEP 4 | STEP 5 |
|---|---|---|---|---|---|
| 01/A | 522.08 | 549.78 | 575.85 | 603.21 | 621.31 |
| 02/B | 566.64 | 593.86 | 620.98 | 648.13 | 667.57 |
| 03/C | 620.99 | 648.13 | 682.02 | 710.89 | 732.22 |
| 04/D | 682.02 | 710.89 | 744.81 | 780.48 | 803.90 |
| 05/E | 744.81 | 780.48 | 817.74 | 856.75 | 882.47 |
| 06/F | 817.74 | 856.75 | 900.87 | 946.73 | 975.15 |
| 07/G | 932.54 | 971.55 | 1015.67 | 1061.54 | 1089.95 |

Effective September 1, 1999 - increase the salary schedule by
3%.

| Salary Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|---|---|---|---|---|---|
| 01/A | 537.74 | 566.28 | 593.13 | 621.31 | 639.95 |
| 02/B | 583.64 | 611.67 | 639.61 | 667.57 | 687.60 |
| 03/C | 639.62 | 667.57 | 702.49 | 732.21 | 754.18 |
| 04/D | 702.49 | 732.21 | 767.16 | 803.90 | 828.02 |
| 05/E | 767.16 | 803.90 | 842.27 | 882.46 | 908.95 |
| 06/F | 842.27 | 882.46 | 927.89 | 975.14 | 1004.41 |
| 07/G | 960.52 | 1000.69 | 1046.14 | 1093.38 | 1122.64 |

Effective September 1, 2000 - increase the salary schedule by
3%.

| Salary Grade | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|---|---|---|---|---|---|
| 01/A | 553.87 | 583.26 | 610.92 | 639.94 | 659.14 |
| 02/B | 601.15 | 630.02 | 658.79 | 687.60 | 708.23 |
| 03/C | 658.81 | 687.60 | 723.56 | 754.18 | 776.81 |
| 04/D | 723.56 | 754.18 | 790.17 | 828.01 | 852.86 |
| 05/E | 790.17 | 828.01 | 867.54 | 908.93 | 936.22 |
| 06/F | 867.54 | 908.93 | 955.73 | 1004.39 | 1034.54 |
| 07/G | 989.33 | 1030.71 | 1077.53 | 1126.19 | 1156.32 |

ember 1, 2001 - increase the salary schedule by

| Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|---|---|---|---|---|
| .49 | 600.76 | 629.25 | 659.14 | 678.92 |
| .19 | 648.92 | 678.56 | 708.23 | 729.48 |
| .57 | 708.23 | 745.27 | 776.80 | 800.11 |
| .27 | 776.80 | 813.88 | 852.85 | 878.45 |
| .88 | 852.85 | 893.56 | 936.20 | 964.30 |
| .56 | 936.20 | 984.40 | 1034.52 | 1065.58 |
| .01 | 1061.64 | 1109.85 | 1159.97 | 1191.01 |

ember 1, 2002 - increase the salary schedule by

| Step 1 | Step 2 | Step 3 | Step 4 | Step 5 |
|---|---|---|---|---|
| 60 | 618.79 | 648.13 | 678.92 | 699.29 |
| 76 | 668.39 | 698.91 | 729.47 | 751.36 |
| 93 | 729.47 | 767.62 | 800.11 | 824.12 |
| 62 | 800.11 | 838.29 | 878.44 | 904.80 |
| 29 | 878.44 | 920.37 | 964.28 | 993.23 |
| 37 | 964.28 | 1013.94 | 1065.56 | 1097.54 |
| .58 | 1093.49 | 1143.15 | 1194.77 | 1226.74 |

|  | ANNUAL | WEEKLY |
|---|---|---|
| RS | 500.00 | 9.58 |
| ARS | 800.00 | 15.33 |
| ARS | 1,300.00 | 24.90 |
| ARS | 1,800.00 | 34.48 |
| ARS | 2,300.00 | 44.06 |
| T | 1,305.00 | 25.00 |

ployees shall advance one step on the Salary
twelve (12) months continuous service in their
e maximum salary of their Grade is reached.

l persons shall be placed on the step of the
ary schedule to which their prior years of service
School Department, City of Boston entitle them.
loyee has no prior service, the Director of
agement has the option to place an employee on the
d step based on his entire record of experience
endation of the Senior Structural Engineer.

**Section 4.** The longevity date for salary purposes for promoted employees will be the same as the Permanent Civil Service date of the promotion.

**Section 5.** All unit members upgraded/promoted will be placed on the 1st step of the salary schedule; if this results in the employee being paid less than his/her previous salary, the employee will be placed on the closest step above his/her previous salary.

## ARTICLE 4 - SICK LEAVE

A.   All employees shall be granted an annual leave of fifteen (15) days without loss of pay for absences caused by illness, or by injury, or by exposure to contagious disease.

   All new employees shall accumulate sick leave at the rate of 1 1/4 days a month.

B.   When sick leave is exhausted, vacation time may be used. All requests for an extension of sick leave shall be made to the Director of Facilities Management.

C.   No employee shall suffer any reduction in his/her credited sick leave reserve due to a change in classification.

D.   Effective 9/1/94, for the purpose of this Article as it applies to new employees in the bargaining unit, "Service" is defined as employment in any Department of the Boston public Schools.

E.   Sick Leave Plan Safeguards.

   The School Committee order concerning sick leave presently in effect requires a registered practicing physician's certificate be furnished:

   1.   When the absence is six (6) days or more

   2.   When an employee is absent both on a Friday and the following Monday and

   3.   When an employee is absent either the day before or the day after a holiday or holiday period.

F.   1.   A bargaining unit member whose industrial accident claim has been accepted and who is receiving workers'

ensation pursuant to G.L. c. 152 will have
ored all sick leave used after initial date of
ry related to said claim and prior to receipt of
ers' compensation pursuant to G.L. c. 152. Such
oyee may, after acceptance of said claim, use such
is or her sick leave accrued prior to acceptance
laim as may result in the payment of full salary
uding career awards applicable at the time of
ry.

tionally, the period of time on workers'
ensation will be counted as years of service for
oses of calculating longevity, seniority, and
ion once the employee returns to work, but in no
t will an employee be entitled to accrue
tional benefits such as sick leave, personal days
sick leave used or accrue or receive benefits such as
vacation or accrue or receive benefits such as
tional career awards during the time that the
oyee is receiving worker's compensation pursuant
.L. c. 152.

ithstanding the foregoing provision of Section 1,
rgaining unit member who is absent due to physical
ly injury as a direct result of a physical assault
battery which occurs during the course of his/her
oyment and, as a result of this injury has been
pted for and is receiving workers' compensation
ent pursuant to G.L. c. 152, shall have restoed
sick leave used to supplement his/her workers'
ensation payments and, which, when added to
her workers' compensation payment, is equal to his
r full weekly salary.  The provisions contained
his section shall be limited to forty-five (45)
ndar days after a bargaining unit member has been
pted for and is receiving workers' compensation.

receiving Workers' Compensation who have not yet
from their injuries will be considered for a
work plan at the employee's regular rate of pay
s medically determined that they are able to do
lf insurer, the self insurer's physician, the
the employee's physician and/or physical
attorney, and the Union may be involved in the
n of an acceptable modified work plan.  The
work plan shall return the employee to the
itle that he/she held prior to the injury and not
y duties outside the employee's original job
n. The modified work plan shall be in accordance

with the laws governing Worker's Compensation in the State
of Massachusetts.  Nothing herein is intended to waive any
individuals statutory rights under Massachusetts State or
Federal laws.

## ARTICLE 5 - SICK LEAVE REDEMPTION

Any member of the bargaining unit who has ten (10) years or more
of service with the City of Boston who retires, resigns or dies
while in the employment of the Boston School system shall be
compensated for unused accumulated sick leave.

Such payment shall be made at the rate of forty (40) percent of
unused sick time, based upon the annual rate of pay of the
person at the time of death, retirement or resignation.

In the even of death of the member, payment shall be made to the
beneficiary.

## ARTICLE 6 - LEAVES OF ABSENCE

|  | Days | Pay |
|---|---|---|
| Personal Leave for Personal needs not otherwise provided for..................................... (One of the three (3) days may be used for emergencies The remaining two (2) days require a minimum notice of twenty four (24) hours to the Senior Structural Engineer.  Failure to provide such minimum notice may result in denial of the requested personal day) | 3 | no loss |
| Delegate to National Conventions of Veterans Org......................................................... | 3 | no loss |

Court Summons:

|  |  |  |
|---|---|---|
| Personal Business................... | | no pay |
| School Business.................... | | no loss |
| Witness............................ | | no loss |
| Court attendance except in a case to which the employee is party....... | | no loss |
| Jury Duty.......................... | | no loss |

| | | |
|---|---|---|
| Death:  Immediate family, anyone residing in same household.  Consecutive working days immediately preceding, following, or including the day of death.  Holidays, vacations or | 5 | no loss |

ns shall be considered working
provision.

| | | |
|---|---|---|
| ncle, aunt, cousin, in-laws, grand-<br>her, grandchild.............. | 1 | no loss |
| (limited to three represent-<br>ion)........................ | 1 | no loss |
| also a relative............. | 1 | no loss |
| hose allowed one day without<br>........................ | 1 | no loss |
| late family, critical, not<br>5) working days in one year | 5 | no loss |
| - Rosh Hashanah and Yom Kippur | 3 | no loss |

### ARTICLE 7 - VACATION

employee who has been employed by the School
f the City of Boston for less than five (5)
accumulate vacation days at the rate of one and
(1-1/4) days per month.  Vacation days may not
n employee until he has completed his first six
f continuous employment.  After six (6) months
s employment, an employee may use his vacation
uch vacation days have been posted.  After the
nths and after the first year of continuous
he employee's vacation time will be posted.
cation time will be posted on or about January
ear.

employee who has been in the employment of the
ttee for five (5) years of full time employment
itled to four (4) weeks vacation with pay.  Any
oyee who has been in the employment of the
ttee for ten (10) year shall be entitled to
ks of vacation with pay.

employee whose employment is terminated by
thout just cause, or by resignation, retirement
hout having taken the vacation to which he is
, in the case of death, his estate, shall be
of such vacation an amount equal to one (1)

full day's pay at his regular rate for each such day of
unused vacation.

D.    Choice of vacation during summer period will be governed by
seniority provided that a vacation request list is
submitted to Senior Structural Engineer by May 1.  Any
other weekly vacation requests shall be submitted to the
Senior Structural Engineer at least one week prior to
requested time.

### ARTICLE 8 - GRIEVANCE PROCEDURE

It is the declared objective of the parties to encourage prompt
resolution of grievances.  The parties recognize the importance
of prompt and equitable disposition of any complaint at the
lowest organizational level possible.  Employees subject to this
Agreement shall not suffer a loss of pay for time spent in
conferring and meeting on a grievance; provided however that
employees involved have assigned duties, except as otherwise
provided herein.  Any person(s) or the Union shall have the
right to present a grievance and have it promptly considered on
its merits.

A.    Definition

A "grievance" shall mean a complaint, (1) that there has
been as to any employee, a violation, misinterpretation or
inequitable application of any of the provisions of the
Agreement, or (2) that an employee has been treated
unfairly or inequitably by reason of an act or condition
which is contrary to established policy governing or
affecting employees, except that the term grievance shall
not apply to any matters as to which the Committee is
without authority to act.  As used in the Article, the term
"employee" shall mean also a group of employees within the
bargaining unit having the same grievance.

B.    Adjustment of Grievances

1.    General Procedures

Step 1.    An employee and/or his Union Representative shall
present a grievance, in writing, to the Senior
Structural Engineer or his designated representative
within seven (7) days after the act or condition which
is the basis of his complaint occurred.  The employee
and the Senior Structural Engineer or his designated
representative shall confer on the grievance with a

to arriving at a mutual satisfactory resolution
e complaint.

e conference, an employee may be represented by a
representative; but where the employee is
ented, he must be present.  A decision shall be
icated, in writing, to the aggrieved employee
n ten (10) days after receiving his complaint.
ion will receive a copy.

rievance is not resolved at Step 1, the
ved employee or Union may appeal by forwarding
ievance in writing to the Assistant General
l for Labor Relations or his designee after he
ceived the Step 1 decision.  The appeal shall
e:

.    Name of grievant;
.    A statement of the grievance and the facts
     involved;
.    The corrective action requested;
.    Name of Union representative at Step 1, if
     any;
.    Signature(s) of grievant(s) or Union
          Representative.

sistant General Counsel for Labor Relations will
 for a conference with the aggrieved employee
 Union representative, if any.  The aggrieved
e shall be present at the conference, except
 need not attend where it is mutually agreed
 facts are in dispute, and that the sole
n before the General Counsel is one of
etation of a provision of this Agreement, or of
 established policy or practice.  The General
 shall issue his decision on the grievance as
 possible, but not later than seventeen (17)
ter receipt of the appeal.

lure of the School Committee representative to
 within the time limits set forth herein or to
 a mutually agreed extension of the time limits,
nstitute an automatic appeal of the grievance
 next level.  The failure of the Union to
 a grievance within the time limits shall
ute a waiver of the grievance.

## ARTICLE 9 - ARBITRATION

h was not resolved at Step 2, under the
ure may be submitted by the Union to
e arbitration may be initiated by filing with
d the American Arbitration Association a request
l of the grievance at Step 2 under the Grievance

or arbitration rules of the American
ciation shall apply to the proceeding.

all issue his written decision not later than
from the date of the close of the hearings or,
have been waived, then from the date of
final statements and proofs to the arbitrator.
he arbitrator will be accepted as final by the
spute, and both will abide by it.

ees that it will apply to all substantially
, the decision of the arbitrator sustaining a
e Union agrees that it will not bring or
t it will not represent any employee in any
s substantially similar to a grievance denied
f the arbitrator.

fee will be shared equally by the parties to

## ARTICLE 10 - PROTECTION

ommittee shall provide to the members of the
upon their request or that of their counsel,
ormation within its possession related to the
fense of any lawsuit involving a member of the
ated to the performance of his duty.

ver a member is advised officially by a
f the Boston Police Department that it cannot
 him from the danger of physical harm during
sorder, the member may leave the premises
f pay.  The employee shall promptly report the
mmediate supervisor and receive instructions

## ARTICLE 11 - EMPLOYEE FILES

All employee's files shall be maintained under the following
conditions:

__Section 1__.  No material derogatory to an employee's conduct,
service, character or personality shall be placed in his file,
unless the employee has had an opportunity to read the material.
The employee shall acknowledge that he has read such material by
affixing his signature on the actual copy to be filed; it is
understood that such signature merely signifies that he has read
the material to be filed and does not indicate agreement with
its contents.

__Section 2__.  The employee shall have the right to answer any
material filed and his answer shall be reviewed by the Director
Facilities Management and placed in his file.

__Section 3__.  Upon request by the employee, he shall be given
access to his file without unreasonable delay, by the Director
Facilities Management.

__Section 4__.  Upon receipt of a written request, the employee
shall be furnished with a reproduction of any material in his
file.

## ARTICLE 12 - UNION BUSINESS

__Section 1__.  The Shop Steward or alternate shall be granted time
by the Director Facilities Management to attend Boston School
Committee meetings when matters pertaining to the Union are on
the agenda, without loss of pay.

__Section 2__.  The Union shall provide the Boston School Committee
with a list of its officers and authorized Union representatives
and shall, as soon as possible, notify the Committee, in
writing, of any changes.  No Union representative shall be
recognized by the Committee, except those designated in writing
by the Union.

__Section 3__.  Space on bulletin boards shall be provided for
posting material containing subjects of interest to Union
members.

__Section 4__.  Small group meetings of the Union may be held on
school property, Campbell Resource Center, at times when the

on duty.  Five days notice shall be given the
al Engineer.

Structural Engineer of the School Committee
Civil Service Notices of Examinations pertaining
t on bulletin board in the office space
Facilities Management Department.

ion Representative using time under this
first give notice to the Senior Structural
designee.  No more than one (1) Union
r grievance committee member may be absent on
n the same issue.

### ARTICLE 13 - DUES DEDUCTION

reby accepts the provision of Section 170 of
he General Laws of Massachusetts and, in
shall certify to the City Treasurer all payroll
ayment of dues to the Union duly authorized by
d by this Agreement.

### ARTICLE 14 - AGENCY FEE

all be a condition of employment during the
ement that every employee in the bargaining
member of the Union shall pay an agency fee to
ng with the Thirtieth (30th) day following his
signing of this Agreement, whichever is later.
ee shall be in an amount certified by the Union
llective bargaining and contract

nion agrees to indemnify the Committee for
financial loss which the Committee may be
r suffer by an administrative agency or court
sdiction as a result of the Committee's
ection 1 of this Article.

### ARTICLE 15 - HOURS OF WORK

egular workweek for full-time employees shall
s.  The regular workday for these employees
hours which shall include a one-half hour

**Section 2.  Flextime**.  A regular work schedule will consist of
five (5) work periods, Monday through Friday between the hours
of 6:00 A.M. and 4:00 P.M.  The Fire Alarm team shall have two
shifts.  The first shift will start between 6:00 AM and 9:00 AM.
The second shift will start between 1:00 PM and 4:00 PM.  Those
working the second shift shall receive a twenty-five dollar
($25.00) shift differential per week.  A two-week notice will be
required if a change in shift is desired by the employer.  No
more than one (1) individual in each division shall be assigned
a starting time of 6:00 AM except the Fire Alarm team which may
have two.  The starting times will be bid under the provision of
Article 24.

Fire alarm team matches to school zones.  Except that starting
time for fire alarm team be assigned to specific geographic
zones, and there will be a minimum of three (3) fire alarm teams
assigned to the day shift.

**Section 3.  On-Call**.  Employees designated to work the on-call
shift shall receive one (1) hour of pay, minimum per day.
Should the employee be called into work while on-call and
respond, that employee will be paid according to the sliding
scale rate for call backs.  Call backs after 11:00 P.M. shall be
a four (4) hour minimum.  Call backs after 8:00 P.M. but before
11:00 P.M. shall be a three (3) hour minimum.  Call backs after
4:00 P.M. but before 8:00 P.M. shall be a two (2) hour minimum.
All hours are to be paid at time and one-half.  This provision
becomes effective July 1, 2000.

| One Man Buildings | | Two Man Buildings |
|---|---|---|
| A.  All of Brighton | Except | J. Mann |
| B.  All of Charlestown | Except | Charlestown High |
| C.  All of Dorchester | Except | Marshall, Lee, Holland |
| | | Cleveland |
| D.  All of South End | Except | Blackstone, Quincy |
| E.  All of South Boston | | |
| F. | | |
| G.  All of West Roxbury | Except | All of Roxbury |
| H.  All of Jamaica Plain | Except | West Roxbury High |
| | | English High, Hennigan |

### ARTICLE 16 - OVERTIME

Employees shall be compensated at the rate of time and one half
(1 1/2) for all hours worked over eight (8) in one day or forty
(40) in one week.

### ARTICLE 17 - HOLIDAYS

ollowing days shall be holidays:

| | |
|---|---|
| y | Independence Day |
| r King Day | Labor Day |
| Birthday | Columbus Day |
| ay | Veteran's Day |
| y | Thanksgiving Day |
| | Christmas Day |
| Day | Good Friday |

lls on an employee's regular day off (Saturday
not celebrated by the School Department on a
Monday or Friday) the employee is entitled to a

employee is not required to work on any of the
n Section 1 of this Article which falls on his
he shall nevertheless be paid his regular
on for the workweek in which the holiday falls.
of his regular service an employee is required
the holidays listed in Section 1 of this
be guaranteed four (4) hours over overtime plus
d in excess of four (4) hours.

### ICLE 18 - VACANCIES AND PROMOTIONS

a vacancy occurs in any Civil Service Title in
it, the vacancy shall be first posted and then
nce with current Civil Service Laws.

mployee, when directed in writing, who is
the duties of a higher grade, shall be
he higher rate from the first day of assignment.

a vacancy occurs in a non Civil Service Title
unit, the vacancy shall be posted within the
nd applications/resumes will be evaluated and
ted of the top three (3) qualified applicants.
ased on seniority, education and experience.
blicly advertise for candidates to insure a
d candidates is available for interviewing and

### ARTICLE 19 - TRAVEL REIMBURSEMENT

Effective July 1, 2000, travel shall be compensated at the rate
of $14.00 per day.

Effective September 1, 2001, travel shall be compensated at the
rate of $15.00 per day.

Travel reimbursement shall be made only when the employee
certifies that he has used his vehicle in the performance of his
services for the School Department.

Reimbursement shall be processed on a monthly basis.

### ARTICLE 20 - ACADEMIC ADVANCEMENT

The Department of Planning and Engineering recognizes and wishes
to encourage further academic education in the employee's
pursuit of greater knowledge in his designated field.  With this
in mind, it is agreed that courses taken in an accredited
technical school which result in either a degree or a
certificate or proficiency in the designated course will be
considered as an educational equivalent length of service.  For
example, any course which requires a full academic year will be
considered as one year of longevity in the salary grade in which
the employee is presently situated.  Such longevity shall take
effect only upon receipt of the degree or the certificate of
proficiency.  In no event shall an employee go beyond the
maximum step of his present grade.  The names of the technical
institutes and the courses offered must be submitted to the
Senior Structural Engineer.  This advance in the salary grade
shall take effect the first Wednesday of the month after the
Senior Structural Engineer accepts the certificate or degree.
Any employee that is on the payroll as of _____(the
date of the signing of the agreement) shall be permitted to
submit any course completed since September 1, 1967, for the
requested approval of the Senior Structural Engineer.  Any
employee that is not on the payroll as of _____ (the
date of the signing of the agreement) may only submit courses
that have been taken while he/she is an employee of Planning and
Engineering.

### ARTICLE 21 - INSURANCE

The City of Boston also provides seventy-five percent (75%) of
the cost of a fine Health Insurance plan, Blue Cross-Blue
Shield. A two thousand dollar ($2,000) free life insurance

rovided with a provision for employees covered
t to purchase more life insurance at a low rate.

## ARTICLE 22 - HANDLING OF NEW ISSUES

Matters of collective bargaining import not covered by this
Agreement may, during the life of this Agreement be handled in
the following manner:

<u>By the Committee:</u>  Except as any change may be commanded by
law, the Committee will continue its policies as outlined
herein.  With respect to matters not covered by this
Agreement which are proper subjects for collective
bargaining, the Committee agrees it will make no changes
without prior consultation and negotiation with the Union.

<u>By the Union:</u>  In any matter not covered in this Agreement
which is a proper subject for collective bargaining, the
Union may raise such issue with the Committee for
consultation and negotiation; except that the Union shall
not renew or seek to renew any question introduced, debated
and settled, either negatively or affirmatively, during the
bargaining prior to final settlement.  This restriction
shall not apply to the areas outlined in the Preamble as
subjects for continuing consultation.  Being a mutual
Agreement, this instrument may be amended at any time by
mutual consent.

## ARTICLE 23 - CAREER AWARDS

A.  Effective September 1, 2000, all persons covered by this
Agreement who have completed at least nine (9) years of
Civil Service in the City of Boston shall receive each year
in addition to any other salary entitlement an incentive
award as indicated below which amount shall be added to and
paid as part of the person's regular salary:

       Nine (9) years of service.................$550
       Fourteen (14) years of service.............850
       Nineteen (19) years of service............1350
       Twenty-nine (29) years of service.........1850
       Thirty-nine (39) years of service.........2350

B.  Effective September 1, 2000,  all persons covered by this
agreement who have completed at least nine (9) years of
Civil Service in the City of Boston shall receive each year
in addition to any other salary entitlement an incentive
award as indicated below which amount shall be added to and
paid as part of the person's regular salary:

years of service.................$650
a (14) years of service............. 950
n (19) years of service............1450
ine (29) years of service.........1950
ine (39) years of service.........2450

## ARTICLE 24 - SENIORITY

ent Planning and Engineering personnel shall
assignment on a seniority basis.  Seniority
s in current Civil Service Law.

er to continue the Department's practice of
yees to become knowledgeable of their
n all Boston School Buildings, the Union
nior Structural Engineer may assign
ees, after all permanent employees have
ing process, to the districts as he deems in
of the Department.

s defined as a group of school buildings put
istrative purposes.  The Union agrees that the
Engineer may, from time to time, amend the
names of school buildings in a zone.

istricts have been set by seniority, any
n the Department caused by death, retirement,
ll be filled by the senior man in the

## ARTICLE 25 - SAVING CLAUSE

ion of this Agreement is, or shall at any time
o law, then such provision shall not be
performed or enforced, except to the extent
aw and substitute action shall be subject to
onsultation and negotiation with the Union.

hat any provision of this Agreement is or
time be contrary to law, all other provisions
ent shall continue in effect.

ESOLUTION OF DIFFERENCES BY PEACEFUL MEANS

ommittee agree that differences between the
ttled by peaceful means as provided within
e Union, in consideration of the value of

---

*Boston Agreement*
*August 31, 2003*                                          20

---

this Agreement and its terms and conditions, and the Legislation
which engendered it, will not engage in, instigate, or condone
any strike, work stoppage, or any concerted refusal to perform
normal work duties on the part of any employee covered by this
Agreement.

## ARTICLE 27 - PERFORMANCE EVALUATION

Section 1.  All employees will be evaluated annually on a
diagnostic-prescriptive evaluation procedure which shall be
reasonably related to the employee's job description.  The
evaluation year will be from September 1 to August 31 for each
employee.

Section 2.  Employees will be evaluated by their immediate
supervisor, consistent with School Committee policy on the
employment/supervision of relatives.  Where the evaluator is
related to the employee to be evaluated, the evaluation will be
performed by the next level of management.

Section 3.  No later than thirty (30) days after the start of
the rating year, the evaluator shall meet with the employee for
the purpose of explaining the diagnostic-prescriptive evaluation
program, answering questions and determining additional job-
related responsibilities which will be covered in the
evaluation.
Within five (5) days after the meeting, the employee will
receive a copy of a list of job-related functions for which
he/she is responsible and on which his/her performance will be
evaluated.

Section 4.  Within ten (10) days following the completion of the
evaluation, the evaluator will meet with the employee for the
purpose of discussing the evaluation.  At this meeting, the
employee will be shown his/her written evaluation and will sign
it to indicate having seen it, but not to indicate agreement or
disagreement.  A copy of the evaluation shall be provided to the
employee.

Section 5.  To allow supervisors to appropriately and
effectively evaluated the performance of the employees they
supervise, the following rating system shall be used:

(U)  The employee fails to meet the standard, and his/her
performance, as measured against this standard, is
unsatisfactory.

---

*The School Committee of the City of Boston Agreement*
*Effective September 1, 2000 through August 31, 2003*                21

fails to meet the expectations of the School
d needs improvement in his/her performance.

ce of the employee meets the standard and
of the School Department.

meets and/or generally exceeds the standards
erformance, as measured against this standard,

ce of the employee exceeds the standards and
ons of the School Department.

ssible ratings. Any rating of "Unsatisfactory"
ent" must be accompanied by the description of
escription for improvement on an attached

accompany a rating of "Exceeds Expectations."
ng of "Meets Expectations or "good" are

creases shall be contingent upon an employee
ll evaluation rating of "Meets Expectations"

the evaluations do not constitute disciplinary
tinued failure to meet performance standards
tional evaluations, warnings, and further
n.

atisfactory evaluation shall be subject to the
ration procedure.

tions will be maintained in the Office of
nt with state and federal laws concerning
d privacy.

## ARTICLE 28 - MISCELLANEOUS

cy in the City of Boston.

he residency requirement of the City of Boston
to the School Committee, employees first
fter December 1, 1992, must be residents of
oston.

### Section 2. Comprehensive Assistance Program for Employees (C.A.P.E.)

A.    The Union and the School committee agree to cooperate full
in the implementation and operation of all phases of the
C.A.P.E. proposal approved by the School committee of the
City of Boston on April 24, 1984.

### Section 3.  S.E.I.U., Local 285, Health and Welfare Fund.

The School Committee agrees to provide for payroll deductions of
employee contributions to the S.E.I.U. , Local 285 Health and
Welfare Fund for those employees who so authorized deductions in
an amount specified by the Local.

## ARTICLE 29 - AFFIRMATIVE ACTION/NON-DISCRIMINATION

As sole collective bargaining agent, the Union will accept into
voluntary membership and will represent equally all eligible
persons in the unit without regard to race, color, creed,
religion, national origin, sex, marital status, sexual
preference, age, or physical handicap.

The Committee agrees to continue its policy of not
discriminating against any person on the basis of race, creed,
color, religion, national origin, sex, marital status, sexual
preference, age, physical handicap or participation in or
association with the activities of any employee association.

The Committee and the Union will both recognize the work
cooperatively to implement affirmative action in the Boston
Public Schools.

## ARTICLE 30 - LABOR/MANAGEMENT RELATIONS COMMITTEE

Section A.   A Labor/Management Committee shall be established
consisting of three (3) representatives from the Union (to be
chosen by the Union) and three (3) from the employer (to be
chosen by the employer).   Time spent by employees meeting shall
be considered to be time worked and shall be paid by the
employer.

Section B.   The Labor/Management Committee shall meet upon the
request of either party and at least monthly to discuss
labor/management issues.

RTICLE 31 - PUBLIC HEALTH AND SAFETY

public health emergency arises in the Boston
the Director of Facilities Management may assign
sist in the testing, abatement and resolution of
ch assignments will not include any hazardous

ARTICLE 32 - ASBESTOSES SCREENING

ttee agrees to provide annually to employees,
fteen (15) years of service, lung screening at a
y selected by the Committee and the Union at no
oyees.

ARTICLE 33 - TECHNOLOGICAL CHANGE

Union and the School Committee recognize that
ustments precipitated by the introduction of new
e School Committee's workforce.  To ease that
Union and the School Committee agree to work
the introduction and implementation process.
sires to provide a healthy and safe working

ttee will provide the Union and the employees
ication of technological change and will involve
e affected employees in the planning process.

School Committee agrees to meet with the Union
abor/management issues regarding these proposed
ssues include:

d introduction of the new equipment;

ction of new job classifications and any changes
job classifications or descriptions;

quirements and availability;

Safety considerations, including ergonomic

itoring and/or machine pacing.

6.    Whether wages, benefits or fringes will be altered by the
      introduction of new technology to current job
      classification(s).

Pregnant employees who work on VDT systems may request temporary
reassignment so that they are not required to work on the VDT,
and be reassigned within two weeks of notification to the
immediate supervisor of the pregnancy and for the duration of
the pregnancy.  This request must be made in writing to the
immediate supervisor.

All employees working on a VDT shall be required to take a break
away from his/her screen of at least fifteen (15) minutes after
two (2) hours of work on the terminal.  In the event the normal
work schedule does not provide a lunch or rest break every two
(2) hours, the employee shall be assigned duties away from the
VDT screen for at least fifteen (15) minutes after two (2) hours
of work.

Section 3.  Equipment.  The School Committee shall make every
effort to ensure that VDT equipment be properly maintained,
including testing for brightness, flicker, clarity of image,
contrast and adjustability, according to standards specified in
the manufacturer's maintenance manual and/or maintenance
agreement; that the VDTs be located away from windows and that
windows in the rooms where VDTs are used will have blinds or
drapes; that in the event screen color or adjustable lighting
are unable to reduce glare then a non-glare screen shall be
fitted on the VDT on an interim basis until another solution is
found; that each VDT have a separate control for brightness and
contrast which is easily adjustable by the employee; that the
screen be free of flicker or blur; that the screen be free of
flicker or blur; that all appropriate and necessary shielding be
installed to protect employees from possible radiation hazards;
and that no employee be assigned to work directly behind a VDT.

Section 4. Training.  Training, which shall include instructions
in the specific operations, special precaution and safety
features, shall be provided during the introduction and
implementation of new technology in the work place.  No employee
shall be required to work on equipment that he/she has not been
trained to operate.  Training shall be conducted by appropriate
personnel.

ARTICLE 34 - DURATION

subject to the appropriation of sufficient
the cost items under M.G.L. Chapter 150E.

all be effective from September 1, 2000 through
provided that it is ratified by both parties
Council of the City of Boston votes a
opriation to the budget of the Boston School
ient-- to fund the Agreement for the first

MMITTEE                 for LOCAL 285, SEIU, AFL-CIO
STON

                        By _Cecilia A. Webb_____

                        Title _President_____

                        Date _____

                Date 7.31.00

_____

of Boston Agreement
gh August 31, 2003                          26

SIDE LETTER OF AGREEMENT ON UPGRADES

**Section 1.**      Vincent Amato
            Mr. Amato shall be upgraded, step to step based
            upon current seniority, to the title of Senior
            Supervisor of Electrical, Grade F, effective
            September 1, 1989, retro paid in lump sum July 1,
            1991.

**Section 2.**      Jack Madden
            Mr. Madden shall be upgraded, step to step based
            upon current seniority, to the title of Chief
            Supervisor of Roofing, Grade G, effective
            September 1, 1989, retro paid in lump sum July 1,
            1991.

**Section 3.**      Greg Westgate
            Mr. Westgate shall be upgraded, step to step
            based upon current seniority, to the title of
            Civil Engineer, Grade F, effective upon execution
            of agreement.

**Section 4.**      Robert Banks
            Mr. Banks shall be upgraded, step to step based
            upon current seniority, to the title of
            Architectural Draftsman to Grade E six months
            after ratification of the contract agreement and
            upon successfully passing a review of the
            Director of Facilities Management that he
            performs the following functions:

            A.    Mr. Banks will be trained and have the
                  ability to use the CAD-CAM;

            B.    He shall be responsible for issuance and
                  maintenance of School Department prints,
                  schematics and continuous updating of
                  drawings;

            C.    He will assist in emergency dispatching;

            D.    He will have proficiency in the work order
                  system (FM01);

            E.    He will perform the duties of Junior
                  Architectural Draftsman; and

_____

*The School Committee of the City of Boston Agreement*
*Effective September 1, 2000 through August 31, 2003*                          27

. He shall perform these duties out of the
Campbell Resource Center Field Office unless
otherwise notified.

n of the Director of Facilities Management shall
ll not be arbitrary or capricious.

.U. AFL-CIO        Boston School Committee

_____        _____

### SIDE LETTER OF AGREEMENT

<u>Section 1</u>.  The  current Jr. Civil Engineer will be upgraded, to
Civil Engineer, effective September 1, 1994, step to step.

<u>Section 2</u>.  Effective September 1, 1994, upgrade the current
most senior Supervisor of School Buildings Electrical
Installation and Maintenance to Senior Supervisor, S.B.,
Electrical Installation and Maintenance step to step.

<u>Section 3</u>.  Each division may have up to two Senior Supervisors.
(Exception:  Any division which has a night shift may have up to
four Senior Supervisors).

<u>Section 4</u>.  A Supervisor, S.B., Electrical Installation and
Maintenance will be upgraded to Senior Supervisor, S.B.,
Electrical Installation and Maintenance upon meeting the
following requirements:  Masters or Journeyman Electrician's
License and three years experience in the Department of Planning
& Engineering and a pre-approved Certificate of Professional
Achievement or an Associates Degree in a related field.

A Supervisor, S.B., Heating and Ventilation will be upgraded to
Senior Supervisor, S.B., Heating and Ventilation upon meeting
the following requirements:  3rd Class Engineer's Licenses and
three years experience in the Department of Planning &
Engineering and a pre-approved Certificate of Professional
Achievement or an Associates Degree in a related field.

A Supervisor, S.B., Alterations and Repairs will be upgraded to
Senior Supervisor, S.B., Alterations and Repair upon meeting the
following requirements:  three years experience in the
Department of Planning & Engineering, a non-restricted
Massachusetts State Construction Supervisor license and a pre-
approved Certificate of Professional Achievement or an
Associates Degree in a related field.

A Supervisor, S.B., Plumbing and Gasfitting will be upgraded to
Senior Supervisor, S.B., Plumbing and Gasfitting, upon meeting
the following requirements:  three years experience in the
Planning & Engineering and a Master or Journeyman Plumbers
License and a pre-approved Certificate of Professional
Achievement or an Associates Degree in a related field.

<u>Section 5, Reorganization of the Electrical Fire Alarm Division</u>.

The School Department and the Union bargained to resolution over
the impact upon the unit members of the reorganization of the

larm Division. Additionally, the parties agree
1995, the following shall occur.

f Senior Supervisor Electrical Fire Alarm will
d into a position of Chief Supervisor Electrical

f Senior Supervisor S.B. Electrical I&M will be
to a position of Supervisor S.B. Electrical

ition of Supervisor Electrical Fire Alarm and a
Assistant Supervisor Electrical Fire Alarm; and

w responsibilities for the night shift team in
al I&M Division.

al 285          For THE BOSTON SCHOOL COMMITTEE

_____   By _____

_____   Title _____

_____   Date _____

---

APPENDIX A

FACILITIES MANAGEMENT DEPARTMENT
Planning and Engineering
Annual Performance Evaluation

Name of Employee

Position Title _____ Date: _____

*************************************************************
*
E - EXCEEDS THE STANDARD   G - MEETS AND/OR      M - MEETS STANDARDS    N - FAILS TO MEET     U - FAILS TO MEET
AND EXPECTATIONS           GENERALLY EXCEEDS     AND EXPECTATIONS       EXPECTATIONS/         PERFORMANCE
                           EXPECTATIONS   I  MPROVEMENT
*************************************************************
*QUANTITY
1. Completes all necessary paperwork in a timely manner.   E_ G_ M_ N_ U__
2. Visits assigned buildings on a regular basis.

     E_ G_ M_ N_ U__

QUALITY

3. Prepares and completes work orders in a clear,
   concise language using all proper terminology.

     E_ G_ M_ N_ U__

4. Directs contractors, inspects work and processes
   invoices in a timely and professional manner.

     E_ G_ M_ N_ U__

5. Prepares and completes assigned contract drawings and
   specifications in time allotted.

     E_ G_ M_ N_ U__

6. Completes all work related tasks in a reasonable
   time frame.                                            E_ G_ M_ N_ U__

7. Uses initiative to solve any problems which
   may arise.

     E_ G_ M_ N_ U__

ATTITUDE

8. Responds to page in a reasonable amount of time.       E_ G_ M_ N_ U__

9. Maintains professional working relationships with
   other members of the department.                       E_ G_ M_ N_ U__

10. Maintains a professional relationship with other
    with other school personnel.                          E_ G_ M_ N_ U__

31

o work in absence of supervision.    E__G__M__N__U__

th reasonable written and oral
.                                     E__G__M__N__U__

gular attendance.                     E__G__M__N__U__

ntracted hours of work.               E__G__M__N__U__

VELOPMENT

cus – understanding needs of customers. E__G__M__N__U__

sibility for improvement.             E__G__M__N__U__

ment in decision making and
ing.                                  E__G__M__N__U__

l priority setting.                   E__G__M__N__U__

l priority setting.                   E__G__M__N__U__

rsonal professional activities.       E__G__M__N__U__

SION CHIEFS ONLY)

LS

ly and meaningful reports for employees
vision.                               E__G__M__N__U__

irects employees in his/her division
based on observed needs and performance. E__G__M__N__U__

ordinates.

N__U__

sputes at lowest level.

N__U__

lary example.

N__U__

_____

32

---

| Mechanical Engineer or Senior Engineer | Date |

| Chief | Date |

| Employee | Date |

33

INDEX

| | Page |
|---|---|
| ...ment | 17 |
| ... | 23 |
| ... | 14 |
| ... | 12 |
| ...g | 24 |
| ... | 13 |
| ... | 19 |
| of Examinations Posting | 14 |
| ...stance Program | 23 |
| ... | 7 |
| ...Family | 7 |
| ...nv. or Veteran's Org. | 7 |
| ... | 14 |
| ...ent | 26 |
| ...rade Compensation | 16 |
| ... | 13 |
| ... | 15 |
| ...e | 9 |
| ... | 24 |
| ...nd | 23 |
| ...ns | 17 |
| ... | 16 |
| ... | 14 |
| ...Family | 8 |
| ... | 17 |
| ... | 8 |
| ... | 7 |
| ...Committee | 23 |
| ... | 7 |
| ... | 17 |
| ...alary Purposes | 5 |
| ... | 2 |
| ...g of | 19 |
| ... | 23 |
| ... | 15 |
| ... | 15 |
| ...ion Form | 31 |
| ...ions | 21 |
| ...) | 7 |
| ...ies | 16 |
| ...sical Harm | 12 |
| ...ty | 24 |
| ...nce | 22 |

| | Page |
|---|---|
| Recognition | |
| Residency | |
| Resolution of Differences | |
| Salary Rates of Pay | |
| Salary Schedule | |
| Saving Clause | 2 |
| Seniority | 2 |
| Sick Leave | |
| Sick Leave Redemption | |
| Side Letter | 2 |
| Standards of Performance | 2 |
| Step Placement on Salary Scale | |
| Technological Change | 2 |
| Titles & Salary Grade | |
| Travel Reimbursement | 1 |
| Union Business | 1 |
| Upgrades-Side Letter | 2 |
| Vacancies & Promotions | 1 |
| Vacations | |
| VDT Systems | 2 |
| Workers' Compensation | |
| Workweek/Workday | 1 |



**OCAL 888**

**SEIU**

*Stronger Together*

SERVICE EMPLOYEES
INTERNATIONAL UNION
AFL-CIO, CLC

November 18, 2004

William Mallen
11 Midland Street
Dorchester, MA 02125

Dear Mr. Mallen;

I am in receipt of your letter dated November 9, 2004 addressed to Deb Sullivan. Please be advised that SEIU Local 888 will not be consulting with your personal attorney on "all material steps" concerning the current Arbitration regarding your termination as you have requested, nor will we be copying correspondences to your attorney. Please feel free to send your attorney any information you wish, but to be clear, it is your obligation to do so not the Local's.

Your letter is unclear about your future intentions. The Union has not withdrawn the grievance protesting your termination. The only question for you is whether you want to have the matter arbitrated. Although whether the Union arbitrates this dispute is ultimately up to the Union, we certainly are interested in your desire. If your intent is to pursue individual claims against the School Committee, that is naturally your decision, and the Union has no involvement in that matter. However, the Union's decision will be guided by what is in the best interests of the Union. If the arbitration is not pursued, that affects the Union and the Committee; you should consult with your own attorney about its effect on any other case that you are considering filing against the School Committee.

There is no definite date for the arbitration, although the arbitrator has offered February 14, 2005. To make sure that the Union understands your intentions, I would like a yes or no answer to whether you would like to proceed with the arbitration postmarked no later than November 26, 2004. If your answer is yes and the Union decides to continue with the arbitration, then we will schedule a preparation meeting 3-4 weeks prior to the new date for the arbitration. If it is no, then we will withdraw the arbitration and consider the matter closed.

Sincerely,

Timothy Hatfield, Esq.
Director of Legal Services

529 Main Street
Suite 772
Charlestown, MA 02129
Telephone: 617.241.3300
Fax: 617.241.5150

cc:    Deb Sullivan

70031010000464958053



**LOCAL 888**

**SEIU**

*Stronger Together*

SERVICE EMPLOYEES
INTERNATIONAL UNION
AFL-CIO, CLC

February 24, 2005

William Mallen
11 Midland Street
Dorchester, MA 02125

Dear Mr. Mallen:

In accordance with the request that your attorney sent us on
your behalf, the Union has been successful in obtaining a
postponement of the arbitration of your termination over the
strong objection of the School Committee. The new date is
May 25 at 9:30 a.m. at the American Arbitration Association in
Boston.

The School Committee aggressively argued that your federal
lawsuit should not affect this matter, which, as you know,
involves a Union-filed grievance over your termination under
the contract. It further pointed out that this is the third
postponement sought by the Union. The arbitrator granted the
Union's request subject to the conditions that there will be no
further postponements and that the School Committee may
argue that, in the event the Union prevails and the arbitrator
orders any backpay remedy, the School Committee can request
that its backpay obligation be tolled for the period of the delay.
I am attaching a copy of correspondence from the AAA,
including the new notice of hearing.

The Union is fully prepared to present your case on the new
date and will notify you of the date for a preparation meeting,
which will take place in April. Please notify me in writing
whether you wish to proceed with the arbitration on or before
March 15, 2005. If I do not hear from you prior to that date, I
will assume that you have no further interest in this matter and
the arbitration will be withdrawn.

Sincerely,

Timothy Hatfield, Esq.
Director of Legal Services

529 Main Street
Suite 722
Charlestown, MA 02129
Telephone: 857.588.0400
Fax: 617.241.5150

cc:     Deb Sullivan
        David Rome, Esq.